UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LORIE PARSONS,

      Plaintiff,

v.                      Civil Action No. 2:20-cv-00392

KROGER LIMITED PARTNERSHIP I,

      Defendant.

MEMORANDUM OPINION AND ORDER

Pending is plaintiff Lorie Parsons' motion to remand (ECF No. 7), filed June 12, 2020.  Also pending is defendant Kroger Limited Partnership I's ("Kroger") motion to dismiss (ECF No. 3), filed June 10, 2020.  These motions pertain to the same legal issue, namely, whether Parsons' claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").

I.  Background and the Pending Motions

Parsons alleges that she is and has been at all times relevant an employee of Kroger.  ECF No. 1-1, at ¶ 1 (Complaint).  "In September[] 2018," she states that she inquired of Dave Wharton, Operations Assistant Store Manager of Kroger 753 in Parkersburg, West Virginia, "as to what her hourly rate of pay would be if she voluntarily left her position as

head deli." Id. at ¶ 2.  She claims that on September 24, 2018, she received an email response from Courtney Perdue, a human resources representative at Kroger, stating that her wage would be $16.25 per hour should she voluntarily leave her head deli position.  Id. at ¶ 3.

Parsons provides an email exchange between Wharton and Perdue, which is attached to the complaint as Exhibit A.  ECF No. 1-3, at 6 (Exhibit A to the Complaint (Email Exchange)).  In a September 4, 2018 email, Wharton wrote to Perdue as follows:

> Courtney,
>
> Lori Parsons is wanting to know if she gives up head Deli what her wages would be, she was hired 10/02/91 and is full time.
>
> Would you get back with me so I can let her know.
>
> Thanks
>
> Dave Wharton

Id. Perdue responded by email to Wharton on the same day, stating, in full, "Lori would go to the wage of $16.25 on the full time scale."  Id.

Parsons states that she left the head deli position, some ten months later, "in July 2019 . . . based entirely upon Defendant's representations that, upon doing so, Plaintiff would be paid the hourly wage of $16.25 per hour . . . ."  ECF No. 1-

2

3, at ¶ 5.   When she received her first paycheck after leaving the position, she alleges that she discovered she was being paid at a base wage rate of $15.01 per hour, with an additional $0.75 per hour adjustment to the base wage rate for a department backup role.   Id. at ¶ 7.   Parsons states that she was not informed "of a rate of pay other than the $16.25 per hour reflected in Exhibit A at any time between September 2018 and the date of the filing of the Complaint in this matter."   Id. at ¶ 9.   Parsons claims that she has not been paid the promised rate of $16.25 per hour since she voluntarily relinquished the head deli position.   Id. at ¶ 8.   She asserts that she "made repeated efforts within the Defendant['s] organization and externally to resolve the failure of the Defendant to pay to the Plaintiff to pay [sic] the promised hourly rate," but that all such efforts, "have been rebuffed by the Defendant."   Id. at ¶ 10.

Parsons filed this action in the Circuit Court of Wood County on May 1, 2020.   ECF No. 1-3.   She alleges that Kroger breached its obligation under the West Virginia Wage Payment and Collection Act ("WPCA") "to notify Plaintiff in writing regarding her rate of pay and to notify the Plaintiff in writing of any change to the Plaintiff's rate of pay at least one full pay period prior to the effective date of such change," as set

forth in W. Va. Code § 21-5-9(2) and W. Va. C.S.R. § 42-5-4.2.
Id. at ¶ 12; accord id. at ¶ 6.  In addition to her WPCA claim,
Parsons asserts a "detrimental reliance" claim based on the
allegation that she detrimentally relied on the representation
that she would be paid at a rate of $16.25 per hour,
"substantially chang[ing] her position with regard to her
employment" based on that representation.  Id. at ¶ 14.

Parsons "demands against the Defendant the difference
in pay between the Plaintiff's promised hourly rate of pay and
the rate of pay actually paid to the Plaintiff from July 2019
until the resolution of this matter."  Id. at ¶ 13.  She further
requests that her rate of pay "be altered to reflect that" she
has a $16.25 per hour base wage rate going forward.  Id. at ¶
14.

Kroger removed the case to this court on June 10,
2020.  ECF No. 1 (Notice of Removal).  In the notice of removal,
Kroger asserts that Parsons' claims are preempted by the LMRA
inasmuch as they "are completely dependent on interpretation of
a collective bargaining agreement," the agreement being that
entitled "Agreement Between Kroger Mid-Atlantic Division and
United Food and Commercial Workers Union Local #400 Charleston
Area Stores" ("Collective Bargaining Agreement") in effect from

4

October 8, 2017, to August 29, 2020, which is attached to the notice of removal as Exhibit D.  Id. at ¶¶ 7, 9; accord ECF No. 1-4 (Exhibit D to the Notice of Removal (Collective Bargaining Agreement)).  Inasmuch as the claims are preempted, Kroger contends that federal question jurisdiction exists under 28 U.S.C. § 1331.  Id. at ¶ 9.  And to the extent the complaint pleads any other state law claims not preempted by the LMRA, Kroger states that supplemental jurisdiction exists under 28 U.S.C. § 1367.  Id. at ¶ 19.

The Collective Bargaining Agreement contains two provisions relevant to this proceeding.  First, Article 5 of the Collective Bargaining Agreement, entitled "Dispute Procedure," provides, as relevant here:

Section 5.2

Should any differences, disputes, or complaints arise over the interpretation of the contents of this Agreement, there shall be an earnest effort on the part of both parties to settle such promptly through the following steps when practical.

Step 1.

By conference between the aggrieved employee, the shop steward and the manager of the store.\

Step 2.

If the grievance is not settled in Step 1, proceed to Step 2 with a conference between an official of the Union and/or grievant and the District Manager or their designee within fourteen (14) working days. The basic issue will be reduced to writing for the District Manager. A reply to the appropriate party will be given within three (3) days after the above conference is held.

Step 3.

If the grievance is not settled in Step 2, proceed to Step 3 with a conference between an official or officials of the Union and the Division Vice President, a representative of the Division Vice President, or both within fourteen (14) working days. A reply will be given to the appropriate party within three (3) days after the above conference is held.


**Section 5.3**

In the event the grievance cannot be adjusted, notice of intent to arbitrate must be given in writing by either party, to the other party within ten (10) calendar days of the date the decision was rendered in Step 3.

Within ten (10) calendar days of the date of the notice to arbitrate, the parties shall request from the Director of Federal Mediation and Conciliation Service a panel of fifteen (15) arbitrators from which an arbitrator shall be chosen by the alternate striking of names. The decision of the arbitrator shall be final and binding upon all parties. The expenses of the arbitrator shall be shared equally by the Union and the Employer.  The arbitrator will render his decision within sixty (60) days of the hearing.

. . .

<u>Section 5.11</u>

**It is understood and agreed that all employees within the bargaining unit covered by this Agreement must exercise all their rights, privileges, or necessary procedures under this Agreement, International and Local Union Constitution, in the settlement of any and all complaints or grievances filed by such employees before taking any action outside of the scope of this Agreement for the settlement of such grievances.**

ECF No. 1-4, at 6-8.

Second, the Collective Bargaining Agreement contains a provision entitled "Schedule 'A' — Wages." <u>Id.</u> at 37-38. Schedule A provides that an employee classified as a "Head Deli Clerk" earned $18.23 per hour in base pay when Parsons left this position in July 2019. <u>Id.</u> at 37. And although it is not clear from the complaint what position Parsons took when she left her head deli position, the pay scale advises that $15.01 per hour, <u>i.e.</u>, the amount she alleges she was paid following the change in position, was the hourly base wage rate for "Full Time Status" employees classified as "(Top Rate) 73" employees. <u>Id.</u> at 38. When Perdue allegedly told Parsons she would make $16.25 per hour with a position change on September 24, 2018, $16.25 was the base wage rate for "FT Clerks at $15.25 on 10/15/2014." <u>Id.</u> at 37.

Kroger filed its motion to dismiss on June 10, 2020. ECF No. 3 (Motion to Dismiss).  Attached thereto is an additional copy of the Collective Bargaining Agreement.  ECF No. 3-1.  In support of the motion, Kroger argues that Parsons' claims are completely preempted by the LMRA inasmuch as they dispute a wage rate that is governed by the Collective Bargaining Agreement and require interpretation of that agreement.  ECF No. 4, at 3-5 (Memorandum in Support of the Motion to Dismiss).  In support of this position, Kroger cites two cases involving LMRA preemption of WPCA claims from this district, <u>Swiger v. Bayer Cropscience, LP</u>, No. 2:15-cv-07593, 2015 WL 5838578, at *1 (S.D. W. Va. Oct. 15, 2015), and <u>Elswick v. Daniels Elec. Inc.</u>, 787 F. Supp. 2d 443 (S.D. W. Va. 2011). <u>Id.</u>  Kroger contends that Article 5 of the Collective Bargaining Agreement requires interpretation of the agreement's contents to be resolved by a grievance procedure culminating in final binding arbitration.  <u>Id.</u> at 5.  Inasmuch as the "Plaintiff, through her designated agent, the UFCW Local 400, has failed to exhaust her administrative remedies under the CBA," Kroger asserts that the action should be dismissed.  <u>Id.</u>

Notwithstanding these arguments, Kroger contends that the plaintiff's wage rate is subject to mandatory collective bargaining under the National Labor Relations Act ("NLRA") and

8

that it would not be able to enter into a valid separate
agreement with Parsons.  Id. at 6-7.  This, in Kroger's
estimation, also warrants dismissal of Parsons' claims.  Kroger
continues,

> Moreover, Plaintiff's claim that Kroger violated the
> WPCA by failing to timely notify her of a change in
> her rate of pay fails as a matter of law because it is
> the CBA that is controlling, not the email. Thus,
> there was no "change" of which to notify Plaintiff in
> the first place.  Plaintiff was timely and validly
> notified of all applicable wage rates in the CBA.
> Consequently, this claim, along with Plaintiff's other
> claims, fails as a matter of law and should be
> dismissed under Rule 12(b)(6).

Id. at 7.


        Finally, Kroger argues that the detrimental reliance
claim should be dismissed for reasons independent of those
concerning the Collective Bargaining Agreement.  It contends
that detrimental reliance is not a separate cause of action in
West Virginia but rather an element of a fraudulent
misrepresentation claim, which was not pled in this case
generally or with particularity as required by Federal Rule of
Civil Procedure 9.  Id. at 8.  Further, to the extent a
fraudulent misrepresentation claim is pled by Parsons, Kroger
asserts that such a claim should be dismissed inasmuch as no

equitable relief is sought and fraudulent misrepresentation claims sound in equity under West Virginia law.  Id. at 9.

In support of her motion to remand, Parsons argues that removal of this action relies on the complete preemption of her claims by Section 301 of the LMRA, which does not exist inasmuch as the WPCA and detrimental reliance claims do not depend on an interpretation of the Collective Bargaining Agreement.  ECF No. 8, at 3-10 (Memorandum in Support of Motion to Remand).  At best, she contends, reference to the Collective Bargaining Agreement is a defense to the claims she asserts, which is insufficient to establish complete preemption for the purposes of jurisdiction.  Id. at 9-10.  Parsons relies on two Fourth Circuit cases in support of her position, Lontz v. Tharp, 413 F.3d 435 (4th Cir. 2005), and Price v. Goals Coal Co., 161 F.3d 3, 1998 WL 536371, at *1 (4th Cir. 1998) (per curiam) (unpublished table opinion).  She asks that the court award her attorney's fees and costs for improper removal.  ECF No. 7, at 2-5.

Responding to the motion to remand, Kroger argues that the Fourth Circuit cases cited by Parsons are inapposite inasmuch as they involve retaliation (Lontz) and an age discrimination violation of the West Virginia Human Rights Act

10

("WVHRA") (Price).   ECF No. 11, at 1-2 (Response to the Motion to Remand).   Additionally, Kroger contends that Parsons does not address the two cases it believes are applicable, Swiger and Elswick.   Id. at 2.

In her reply, Parsons acknowledges that she is "a member of a collective bargaining unit" but points to another case, involving a WVHRA claim relating to age discrimination, Adkins v. SuperValu, Inc., No. 3:08-1448, 2009 WL 2029807 (S.D. W. Va. July 9, 2009), in support of her position that complete preemption under the LMRA is inapplicable.   ECF No. 14, at 2 (Reply in Support of Motion to Remand).   She further cites Stump v. Cyprus Kanawha Corp., 919 F. Supp. 221 (S.D. W. Va. 1995) for the proposition that complete preemption does not occur where "only a mere reference to a collective bargaining agreement is necessary for the purpose of calculating damages."   ECF No. 14, at 2.   She also contends that Swiger supports the contention that her action is not completely preempted.   Id. at 3.

Parsons did not respond to the motion to dismiss, and consequently, no reply by Kroger was filed.

II.  Motion to Remand

A.  Legal Standard

Federal removal jurisdiction is governed by 28 U.S.C. § 1441(a), which provides: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  "The burden of establishing federal jurisdiction is placed upon the party seeking removal."  Mulcahey v. Colum. Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)). Inasmuch as removal jurisdiction involves "significant federalism concerns," it is strictly construed, and remand is appropriate where "federal jurisdiction is doubtful."  Id. (citations omitted).

Although the Lontz case cited by Parsons is not particularly pertinent to the question of whether jurisdiction exists in this action inasmuch as it considered whether a WPCA claim was preempted by the NLRA rather than the LMRA, see 413 F.3d at 438-39, it does provide principles that guide the court's jurisdictional analysis.  "[Title 28 U.S.C.] § 1441

12

generally makes removal appropriate in three circumstances":
"the parties are diverse and meet the statutory requirements for
diversity jurisdiction"; "the face of the complaint raises a
federal question"; and where the complete preemption doctrine,
which "is actually a narrow exception to the well-pleaded
complaint rule" implicated by federal question jurisdiction,
applies.  Id. at 439 (citations omitted).  Kroger does not
contend that diversity jurisdiction exists or that a federal
question arises on the face of the complaint, and thus, only
complete preemption is relevant here.

        The complete preemption doctrine "provides that if the
subject matter of a putative state law claim has been totally
subsumed by federal law — such that state law cannot even treat
on the subject matter — then removal is appropriate."  Id. at
439-40 (citing Aetna Health Inc. v. Davila, 542 U.S. 200 (2004);
Franchise Tax Board v. Construction Laborers Vacation Trust, 463
U.S. 1, 23–24, (1983); King v. Marriott Int'l, Inc., 337 F.3d
421, 424-25 (4th Cir. 2003)).  In other words, "when complete
preemption exists, there is 'no such thing' as the state
action," and the relevant claim is transformed into a federal
cause of action.  Id. at 441 (quoting Beneficial Nat'l Bank v.
Anderson, 539 U.S. 1, 11 (2003)) (citation omitted).

13

"[C]ompletely preempted claims are rare," and there is a presumption against finding complete preemption where the complaint appears to assert state law claims.  Id. at 440 (citations omitted).  "To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'"  Pinney v. Nokia, Inc., 402 F.3d 430, 449 (4th Cir. 2005) (alterations in original) (quoting King, 337 F.3d at 425).  Section 301 of the LMRA is one of only three federal statutory provisions in which the Supreme Court of the United States has found complete preemption, the others being the National Bank Act and the Employee Retirement Income Security Act ("ERISA").  Lontz, 413 F.3d at 441; accord Beneficial, 539 U.S. at 10–11 (National Bank Act complete preemption); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987) (ERISA complete preemption); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560 (1968) (Section 301 of the LMRA complete preemption).

14

Section 301, as codified at 29 U.S.C. § 185, provides in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The Supreme Court has held that Section 301, "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988) (citing Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962)).

Section 301 preempts a state law claim if resolution of the state claim is "inextricably intertwined with consideration of the terms of the labor contract" or application of state law to a dispute "requires the interpretation of a collective bargaining agreement." Lingle, 486 U.S. at 413; Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). Section 301 does not "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . ." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) (citations omitted).

15

Instead, "[I]t is the legal character of a claim, as independent of rights under a collective-bargaining agreement, . . . that decides whether a state cause of action may go forward." Id. at 123-24 (internal citations and quotation marks omitted).

### B.  Analysis

Inasmuch as the legal character of the state law claim asserted is critical to the question of complete preemption by Section 301 of the LMRA, the court notes at the outset that two of the cases relied upon by Parsons are inapposite to the analysis of whether complete preemption confers jurisdiction in this action since they concern claims brought under the WVHRA.[1] As earlier noted, those cases, Price and Adkins, involved claims brought by plaintiffs for age discrimination under the WVHRA. Price, 1998 WL 536371, at *1-2; Adkins, 2009 WL 2029807, at *5-6.

To the extent these cases are applicable to the circumstances of this action involving a WPCA claim, each illustrates the same principle.  In Price, the Fourth Circuit declined to find complete preemption where the collective

---

[1]    As above noted, Lontz, which is also relied on by Parsons, is not applicable inasmuch as it considered whether a WPCA claim was preempted by the NLRA rather than the LMRA.

bargaining agreement at issue was only relevant insofar as its arbitration provision could be used as a defense to the WVHRA claim.  1998 WL 536371, at *7-8.  In Adkins, the court found that the collective bargaining agreement at issue was only relevant insofar as its "recall" provisions could be used as a defense to the WVHRA claim.  2009 WL 2029807, at *6.  These decisions demonstrate the well-established principle that "[a] defendant cannot convert a state law claim into one preempted under federal law by merely injecting a defense that may require analysis of a collective bargaining agreement."  Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 398-99 (1987)).

But contrary to Parsons' arguments, her WPCA claim is not one that involves the Collective Bargaining Agreement only to the extent that its dispute procedure provisions may be raised as a defense.  The WPCA "does not create a right to compensation.  Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." Adkins v. Am. Mine Research, Inc., 765 S.E.2d 217, 221 (W. Va. 2014) (emphasis added) (internal citations and quotation marks omitted).  The specific section of the WPCA that provides for private actions, W. Va. Code § 21-5-12(a), states: "Any person whose wages have not been paid in accord with this article, or

17

the commissioner or his designated representative, upon the request of such person, may bring any legal action necessary to collect a claim under this article."  (emphasis added); see also Syl Pt. 3, Beichler v. W. Va. Univ. at Parkersburg, 700 S.E.2d 532 (W. Va. 2010) (holding that pursuant to W. Va. Code § 21-5-12(a), "a person whose wages have not been paid in accord with the West Virginia Wage Payment and Collection Act may initiate a claim for the unpaid wages either through the administrative remedies provided under the Act or by filing a complaint for the unpaid wages directly in circuit court."). Further, "[t]he contract between the parties governs in determining whether specific wages are earned."  Am. Mine Research, Inc., 765 S.E.2d at 221 (internal citations and quotation marks omitted); see also Spano v. Metro. Life Ins., 2:09-cv-01243, 2011 WL 2180657, at *2 (S.D. W. Va. June 2, 2011) ("In WPCA cases, courts must consider the specific employment agreement.").

Parsons' WPCA cause of action is premised on the argument that she is entitled to a base wage rate higher than what she was actually paid following her departure from the head deli position.  Resolution of the claim, like other WPCA claims, necessarily requires interpretation of the contract that

18

prescribes the relevant base wage rates, _i.e._, the Collective Bargaining Agreement.

Parsons attempts to frame her WPCA claim as one pursuant to W. Va. Code § 21-5-9(2) and W. Va. C.S.R. § 42-5-4.2 inasmuch as she believes she was entitled to written notice from Kroger, which was allegedly not provided, one pay period prior to the effective date her base wage rate changed.  W. Va. Code § 21-5-9(2) prescribes, "Every person, firm and corporation shall . . . [n]otify his employees in writing, or through a posted notice maintained in a place accessible to his employees of any changes in the [rate of pay, and of the day, hour, or place of payment] prior to the time of such changes."  W. Va. C.S.R. § 42-5-4.2 states, "When an employer changes an employee's rate of pay, pay period, place or method of payment, time of payment, or any other term of employment, the employer shall furnish a written notice to the affected employee at least 1 full pay period prior to the effective date of the change."  It is difficult to see how these provisions relate to the WPCA claim brought by Parsons, namely, that which seeks wages allegedly earned and requests a prospective adjustment to her base wage rate.

On a related note, Parsons likely cannot proceed with a WPCA claim premised solely on W. Va. Code § 21-5-9(2) and the corresponding regulation found in W. Va. C.S.R. § 42-5-4.2.  In Byard v. Verizon W. Va., Inc., No. 1:11CV132, 2012 WL 1085775 (N.D. W. Va. Mar. 30, 2012), the United States District Court for the Northern District of West Virginia held that no private cause of action exists for violations of W. Va. Code § 21-5-9(6), which, inter alia, obliges employers to make and keep wage and hour records for employees.  Id. at *16-18.  In doing so, the court noted that "[t]he enforcement scheme created by the WPCA provides for a combination of administrative and private remedies."  Id. at *16.  With respect to administrative remedies, the court observed that the Commissioner of the West Virginia Division of Labor "is charged with full administrative enforcement of the WPCA," may investigate "whether any provision of the WPCA has been violated," issue subpoenas, and conduct "proceedings which include an investigation, an initial meeting with the parties, a hearing before a hearing examiner and the entry of an order appealable to circuit court."  Id. (citing W. Va. Code § 21-5-11(a)-(b); W. Va. C.S.R. § 42-5-3; Beichler, 700 S.E.2d at 535) (internal quotation marks omitted).

20

The __Byard__ court recognized, however, that "[by] its terms, the WPCA limits private causes of action under the statute, and the accompanying right to file directly in state court, to employees who seek to 'collect a claim' for unpaid wages," as set forth in W. Va. Code § 21-5-12(a).  __Id.__ at *18 (citing __Beichler__, 700 S.E.2d at 535-36).  __Byard__ determined that W. Va. Code § 21-5-9(6) "does not directly concern unpaid wages" inasmuch as that subsection concerns recordkeeping.  __Id.__ at *17. The court further noted that the WPCA explicitly prescribes remedies for "clearly enforceable" unpaid wage-related provisions, W. Va. Code §§ 21-5-3 and 21-5-4.  __Id.__ at *18 (citing __Atchison v. Novartis Pharm. Corp.__, No. 3:11-cv-0039, 2012 WL 851114, at *2 (S.D. W. Va. March 13, 2012)).  By contrast, "[v]iolations of W. Va. Code § 21-5-9 . . . have no identified remedy or damages."  __Id.__  Based on this analysis, the court held as follows:

> The plain language of the WPCA and accompanying regulations place administration and enforcement of W. Va. Code § 21-5-9 squarely within the purview of the Commissioner. To the extent the plaintiffs have any sort of claim arising under this provision, a fact far from clear, it is not one that they are entitled to privately enforce or bring to court in the first instance.

__Id.__ (citing W. Va. Code § 21-5-12(a)).

21

The cause of action asserted in <u>Byard</u> is not completely analogous to that pled by Parsons inasmuch as Parsons purports to proceed under subsection (2) of W. Va. Code § 21-5-9.  But <u>Byard's</u> conclusion, drawn from an understanding of the WPCA's administrative and private remedy dichotomy, would seem equally applicable here inasmuch as W. Va. Code § 21-5-9(2) pertains directly to notice (and not unpaid wages) and there is generally no statutory remedy prescribed for violations of this subsection.

Regardless, Parsons does assert she is owed unpaid wages under the WPCA, and "the Supreme Court has refused to allow artful pleading to circumvent § 301's preemptive force." <u>Davis v. Bell Atlantic-West Virginia, Inc.</u>, 110 F.3d 245, 247 (4th Cir. 1997) (citing <u>Allis-Chalmers Corp.</u>, 471 U.S. at 211). "'Form is not to triumph over substance as employees relabel contract claims as claims for tortious breach of contract' or other tort actions arising from contract duties." <u>Price</u>, 1998 WL 536371, at *6 (quoting <u>Davis</u>, 110 F.3d at 247).  Thus, to the extent Parsons attempts to diminish the contractual nature of her claim with references to W. Va. Code § 21-5-9(2) and W. Va. C.S.R. § 42-5-4.2, such references will not operate to defeat complete preemption in this case.

Further, this court's reasoning in <u>Hayes v. Bayer Cropscience, LP</u>, 139 F. Supp. 3d 795 (S.D. W. Va. 2015), the published companion to <u>Swiger</u>, cited by Kroger, is persuasive. The <u>Swiger</u> and <u>Hayes</u> opinions, each issued by United States District Judge Joseph R. Goodwin on October 5, 2015, are near carbon copies of each other and appear to involve different plaintiffs asserting the same claims against the same defendants with the same counsel representing the respective sides in each case. <u>See Hayes</u>, 139 F. Supp. 3d at 798; <u>Swiger</u>, 2015 WL 5838578, at *1. The opinions have identical LMRA preemption analyses. <u>See Hayes</u>, 139 F. Supp. 3d at 802-04; <u>Swiger</u>, 2015 WL 5838578, at *3-5. And four days following the issuance of these opinions, the cases were consolidated. <u>See Swiger</u>, 2015 WL 6956652, at *1-2. For simplicity, the court refers only to <u>Hayes</u> in the body of this opinion.

The plaintiff in <u>Hayes</u>, a union member covered by the terms of a collective bargaining agreement, worked as a chemical operator for Bayer. <u>Id.</u> at 799. After Bayer announced it would be discontinuing certain production lines and, as a result, 220 employees were expected to lose employment, it negotiated a voluntary severance plan with the union, which was incorporated into the collective bargaining agreement. <u>Id.</u> Bayer's vice president thereafter issued a memorandum, which the

plaintiff believed to contain a promise to pay $25,000 for a voluntary resignation if he remained with the company until July 30, 2012.  Id.  "Acting on his belief, the plaintiff advised Bayer via an email communication on July 1, 2012, that he intended to resign his position effective August 2, 2012."  Id.  "Soon afterward, a representative of Bayer informed the plaintiff that Bayer 'could not commit to pay the [p]laintiff $25,000 by August 2 and further advised that it could not commit to August 2 as an acceptable date of departure for the [p]laintiff.'"  Id.  (alterations in original).  The plaintiff filed a WPCA claim in the Circuit Court of Kanawha County, and the defendants removed on the basis of complete preemption under the LMRA and ERISA.  Id.

        Considering the plaintiff's motion to remand, the court found that Section 301 of the LMRA completely preempted the claim asserted by the plaintiff.[2]  Id. at 803-04. Specifically, the court found that the plaintiff's claim was not independent of rights conveyed under the CBA inasmuch as the alleged right to payment stemmed from "promises" made by Bayer through its vice president's memorandum and the NLRA precludes employers from "unilaterally alter[ing] certain terms and

_____

[2]     The court did not find the claim to be completely preempted by ERISA.  Hayes, 139 F. Supp. 3d at 801-02.

24

conditions of employment when employees are members of a
certified bargaining unit — a union." Id. at 803. Since Bayer
"was simply not able to enter into separate agreements with
employees regarding terms and conditions of employment that are
subject to mandatory collective bargaining under federal law,"
i.e., severance pay in that case, the court found that the
plaintiff's reliance on the vice-president's memorandum was
misplaced and that the claim was not independent of the rights
conveyed under the collective bargaining agreement. Id.

The court further found that the plaintiff's claim was
inextricably intertwined with consideration of the terms and
conditions of the collective bargaining agreement. Id. at 803-
04. The court rejected the plaintiff's argument that Stump
weighed in favor of remand inasmuch as Stump dealt with a WPCA
claim for final wages against a defunct employer, which only
required consultation of a collective bargaining agreement for
the purposes of determining damages. Id. (citing Stump, 919 F.
Supp. at 223-25). Hayes, on the other hand, "concern[ed] a
benefit that is wholly derived from a collective bargaining
agreement and d[id] not implicate the WPCA" since severance pay,
unlike wages, is not covered by the WPCA. Id. at 804. Thus,
the court determined, "The plaintiff's claim requires a review
of the CBA to determine whether he is even entitled to the

severance pay he seeks," leading to the conclusions that the claim was inextricably intertwined with consideration of the terms of the collective bargaining agreement and was necessarily preempted by Section 301 of the LMRA.

This case is distinguishable from <u>Hayes</u> to a certain extent inasmuch as it involves a claim for wages covered by the WPCA rather than a severance pay claim that purportedly, but did not actually, fall under the WPCA.  On the other hand, <u>Hayes</u> is generally instructive.

Like the plaintiff in <u>Hayes</u>, Parsons pursues a claim based on the representations of an employee of the defendant that she would receive certain compensation.  And just as Bayer, through its vice president, could not unilaterally alter the terms and conditions of employment that were covered by the collective bargaining agreement in that case, namely, those concerning severance pay, Kroger could not unilaterally, through Wharton or Perdue, alter Parsons' wage rate inasmuch as her wages were subject to mandatory collective bargaining in accordance with the NLRA.  <u>See</u> <u>Dorsey Trailers, Inc. v. N.L.R.B.</u>, 233 F.3d 831, 838 (4th Cir. 2000) ("Matters falling within the category of wages, hours, and other terms or conditions of employment are mandatory subjects of bargaining.

An employer commits an unfair labor practice under Section 8(a)(5) [of the NLRA] when it makes a unilateral change or otherwise fails to bargain in good faith on any mandatory subject.") (citing 29 U.S.C. § 158(a)(5); First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 675 (1981)).

Importantly, this case differs from Stump, in which the court found that consultation of the collective bargaining agreement for the purposes of identifying the appropriate amount of damages did not warrant preemption under Section 301 of the LMRA.  919 F. Supp. at 224-25.  Instead, it resembles Hayes inasmuch as the question of whether Parsons is entitled to relief at all necessarily requires consideration of the terms of the Collective Bargaining Agreement, which prescribe the appropriate base wage rates for particular employment positions during the period of time at issue.

Since the success of the WPCA claim asserted in this action is "inextricably intertwined" with consideration of the terms of the Collective Bargaining Agreement, the court finds that the claim is preempted by Section 301 of the LMRA.  Accordingly, the court has subject matter jurisdiction over that claim under the doctrine of complete preemption.

27

In connection with the motion to dismiss and its preemption arguments therein, the defendant generally argues that the detrimental reliance claim is also completely preempted by Section 301 of the LMRA.  See, e.g., ECF No. 4, at 5 ("[T]here is complete federal preemption of Plaintiff's claims in this case because interpretation of a collective bargaining agreement is required.") (emphasis added).  However, it makes no complete preemption argument specific to claims for detrimental reliance and does not cite any caselaw pertaining thereto.

It is fairly clear that consideration of the Collective Bargaining Agreement is necessary for the purposes of evaluating a defense against the detrimental reliance claim since such a claim, like the purported WPCA claim, concerns a wage dispute that implicates Article 5's grievance and arbitration provisions.  Still, as the preceding illustrates, consideration of a collective bargaining agreement to analyze a defense to a claim is not sufficient to demonstrate complete preemption for jurisdictional purposes.  Absent any arguments specific to complete preemption of the detrimental reliance claim, the court finds that Kroger has not overcome the presumption against complete preemption as that presumption pertains to this claim.

That said, Kroger has asserted in its notice of removal that supplemental jurisdiction exists for any claim that is not completely preempted by Section 301 of the LMRA in its notice of removal.  Under 28 U.S.C. § 1367(a),

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Where a state law claim forms part of the same case or controversy as another that is completely preempted under Section 301 of the LMRA, the court may exercise supplemental jurisdiction over the claim that has not been completely preempted.  See Sayre v. United Steelworkers of Am., AFL-CIO, District 8, No. 2:07-0787, 2010 WL 3810618, at *9 (S.D. W. Va. Sept. 23, 2010) (exercising supplemental jurisdiction over a negligent misrepresentation claim after finding a negligence claim to be preempted by Section 301 of the LMRA).  The detrimental reliance claim patently forms part of the same case or controversy as the purported WPCA claim, and the court will exercise supplemental jurisdiction over it.

### III.  Motion to Dismiss

### A.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citation omitted).

The court "must accept as true all of the factual allegations contained in the [pleading]."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56).  Such factual allegations should be distinguished from "mere

30

conclusory statements," which are not to be regarded as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Fourth Circuit has clarified that documents attached to a motion to dismiss may be considered without converting the motion to one for summary judgment "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)).

As the court's preemption analysis in the preceding section demonstrates, the Collective Bargaining Agreement is integral to the complaint inasmuch as the success of the WPCA claim hinges on whether Parsons is entitled to the pay she seeks thereunder. Moreover, no party disputes the authenticity of the Collective Bargaining Agreement. Accordingly, the court will consider it without converting Kroger's motion to a motion for summary judgment.

B.  Analysis

Having established jurisdiction, the court must
determine whether the claims raised by the plaintiff should be
dismissed as asserted by Kroger.[3]

"A state law claim that is preempted by the LMRA may
yet survive if it states a claim under the federal statute."
Elswick, 787 F. Supp. 2d at 448 (citing Caterpillar, Inc., 482
U.S. at 393; Allis-Chalmers Corp., 471 U.S. at 220).  As was the
case in Elswick, where the defendant likewise contended that the
preempted WCPA claim should be dismissed for failure to exhaust
administrative remedies, it is necessary to consider whether
Parsons' preempted claim should be dismissed for failure to
exhaust.  See id. (citing Clayton v. Int'l Union, 451 U.S. 679,
681 (1981)).

---

[3]     Inasmuch as Parsons neglected to respond to the motion to
dismiss, she offers no input on Kroger's dismissal arguments
apart from the preemption issue briefed in connection with the
motion to remand.  The fact that she did not respond to the
motion to dismiss, however, does not constitute a per se
admission that the motion should be granted.  See, e.g., Hughes
v. Cabell Cnty., No. 3:19-cv-00606, 2020 WL 2202328, at *5 (S.D.
W. Va. Apr. 14, 2020); Hanshaw v. Wells Fargo, No.
2:11-cv-00331, 2014 WL 4063828, at *4 n. 5 (S.D. W. Va. Aug. 14,
2014).  Accordingly, the court will address the merits of
dismissal pursuant to Rule 12(b)(6).

Subject to certain exceptions not applicable here, "an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" prior to bringing an action pursuant to Section 301 of the LMRA.  DelCostello v. Int'l Broth. Of Teamsters, 462 U.S. 151, 164 (1983) (citations omitted).  See generally, Staudner v. Robinson Aviation, Inc., 910 F.3d 141 (4th Cir. 2018).  "[T]he exhaustion requirement is not a freestanding rule of law, but rather a matter of contract enforcement, holding parties to their agreement to make a contractual grievance process the 'exclusive remedy' for breaches of that contract."  Staudner, 910 F.3d at 148 (quoting Vaca v. Sipes, 386 U.S. 171, 184 (1967)).  Thus, "the threshold question is whether the parties here in fact have agreed to a mandatory and exclusive grievance process."  Id.

It is apparent that the Collective Bargaining Agreement prescribes a mandatory and exclusive grievance process for the preempted claim asserted by Parsons.  Article 5, Section 5.2 of the Collective Bargaining Agreement states, "should any differences, disputes, or complaints arise over the interpretation of the contents of this Agreement, there shall be an earnest effort on the part of both parties to settle such promptly through the following steps when practical."  ECF No.

3-1, at 6 (emphasis added).  The preempted claim, which challenges the wages earned and appropriate wage rate as prescribed in Schedule A of the Collective Bargaining Agreement, constitutes a dispute over the interpretation of the base wage rate provisions found in Appendix A.  The word "shall" mandates compliance with the grievance process "when practical," and there is no indication that compliance therewith would have been impractical in this case.

The Collective Bargaining Agreement proceeds to lay out the three steps in Section 5.2, and Section 5.3 states that "[i]n the event the grievance cannot be adjusted, notice of intent to arbitrate must be given in writing by either party, to the other party within ten (10) calendar days of the date the decision was rendered in Step 3."  Id.  Section 5.3 goes on to state, "The decision of the arbitrator shall be final and binding."  Id.

Parsons' complaint alleges that she, "made repeated efforts within the Defendant['s] organization and externally to resolve the failure of the Defendant to pay to the Plaintiff to pay [sic] the promised hourly rate," only for her efforts to, "have been rebuffed by the Defendant."  ECF No. 1-3, at ¶ 10. This vague assertion, however, does not establish compliance

with the specific three-step grievance procedure followed by
binding arbitration.  Indeed, there is no indication that
Parsons attempted to follow the three-step grievance procedure
to resolve the wage dispute, and it is obvious by virtue of this
action being before the court that the claim was not ultimately
subjected to binding arbitration.  Since Parsons did not comply
with the mandatory grievance and arbitration procedures provided
for in Article 5 of the Collective Bargaining Agreement, the
preempted claim, brought under the WPCA, must be dismissed.  See
Elswick, 787 F. Supp. 2d at 449 ("Accordingly, the court
concludes that Elswick inexcusably failed to exhaust his
remedies, rendering dismissal of the State Claim appropriate.").

The detrimental reliance claim similarly fails.[4]  Like the preempted WPCA claim, Parsons uses this claim to assert entitlement to damages constituting the difference between $16.25 and $15.01 per hour base wage rates from July 2019 until the resolution of this case as well as prospective relief in the form of what would essentially be a raise to a base wage rate of $16.25 per hour.  Since this claim necessarily concerns a wage dispute, Parsons was required to abide by Article 5's grievance and arbitration procedures, which she did not do.  Thus, dismissal of the detrimental reliance claim is also appropriate.

---

[4]    The court recognizes that inasmuch as it has determined that dismissal of the completely preempted claim is appropriate, it maintains discretion as to whether to decline to exercise supplemental jurisdiction over the detrimental reliance claim and remand the claim under 28 U.S.C. § 1367(c).  See, e.g., Hinson v. Norwest Fin. South Carolina, Inc., 239 F.3d 611, 616-17 (4th Cir. 2001).  Put another way with respect to Rule 12(b)(6) dismissals, the Supreme Court has recognized that "when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citation omitted).

When determining whether to exercise supplemental jurisdiction or remand the case, courts consider "principles of economy, convenience, fairness, and comity." Hinson, 239 F.3d at 617 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)).  Inasmuch as it is clear that the detrimental reliance claim should be dismissed for failure to comply with the grievance and arbitration procedures found in Article 5 of the Collective Bargaining Agreement, these principles favor adjudication and dismissal of the claim by this court at this time rather than remand.

V.   Conclusion

Accordingly, it is ORDERED that:

1.   Parsons' motion to remand (ECF No. 7) be, and it hereby is, DENIED.

2.   Kroger's motion to dismiss (ECF No. 3) be, and it hereby is, GRANTED.  The WPCA and detrimental reliance claims are dismissed with prejudice.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER:  March 31, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

37